**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

SPIRE MISSOURI INC., et al.,      )
                                    )
          Plaintiffs,     )
                                    )
v.                              )     Case No.   18-0248-CV-W-FJG
                                    )
USIC LOCATING SERVICES, LLC,   )
                                  )
          Defendant.    )

## <u>ORDER</u>

Before the Court are (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 73); and (2) USIC Locating Services, LLC's Motion for Summary Judgment (Doc. No. 77). The Court held oral argument on these motions on March 3, 2020.

## I.    Background

On February 21, 2018, plaintiffs filed their Petition against defendant. Plaintiffs seek indemnification from defendant for settlement payments, litigation costs, and other costs and expenses related to plaintiffs' settlements of state court lawsuits related to the February 2013 gas explosion at JJ's Bar and Grill. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## II.    Facts

MGE is a natural gas company serving the Kansas City area. MGE is Plaintiff Spire's predecessor company. Plaintiffs AEGIS and EIM, are currently Spire's insurers and, prior to the acquisition by Spire, were MGE's insurers. Plaintiffs AEGIS and EIM paid claims, attorney fees and expenses pursuant to MGE's policies, and seek to recover from defendant policy benefits paid to and on behalf of Spire.

USIC is an underground facility locating and marking company, providing utility locating services. USIC's website describes USIC as a "leader in damage prevention" and states that it performs more than 70 million locates annually for underground facility owners in the United States and Canada.

In February 2010, Spire's predecessor MGE and USIC entered into a "Master Professional Services Agreement" or "MPSA", Agreement No. MPSA-400932, with an effective date of January 1, 2010. See Ex. A, Doc. No. 74-1. The Agreement is governed by Missouri law. Through the Agreement, USIC agreed to perform locate services for MGE which may relate to construction and excavation projects. See, e.g., Ex. 2 (Depo. Ex. 3025), p. 18 ("Statement of Work," declaring that USIC shall locate and mark MGE's underground facilities "that may be in conflict with digging activity" designated "within a specified excavation area"); Doc. No. 55, p. 37 ("Contractor's Rate Schedule," recognizing that USIC's services will relate to "long locate construction projects"). USIC received locate requests from the Missouri One Call Center. An attachment to the MPSA specifically incorporates Missouri's One Call Law (R.S.Mo. § 319.015-319.050) and requires USIC to "follow all requirements" of that law.

As it relates to this lawsuit, in February 2013 USIC was providing locating services for utilities near where Heartland Midwest ("Heartland") was performing excavation to install fiber-optic cable service to a building that was being constructed across the street from what was then JJ's Restaurant in Kansas City, Missouri. On February 19, 2013, employees of Heartland punctured an MGE gas pipeline while excavating. Thereafter, a natural gas explosion destroyed JJ's Bar & Grill, resulting in one death, multiple personal injuries and multiple instances of property damage. Shortly after the explosion, multiple persons and businesses began filing lawsuits (at least 13 separate cases), asserting that

2

MGE and USIC (among other defendants) acted negligently in causing their injuries and property damages.

USIC was acting pursuant to the MPSA when it located and marked the approximate location of MGE's gas main outside of JJ's Bar and Grill. The parties agree that § 12 of the MPSA is the governing agreement for the situation at issue in this litigation. Section 12 of the MPSA provides:

**12. INDEMNIFICATION**.

**12.1 INDEMNITY.** TO THE FULLEST EXTENT PERMITTED BY LAW, CONTRACTOR WILL AND DOES HEREBY AGREE TO DEFEND, PROTECT, RELEASE, INDEMNIFY, AND HOLD HARMLESS COMPANY AND ITS AFFILIATES, TOGETHER WITH THE RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, SERVANTS, INSURERS, LEGAL REPRESENTATIVES, SUCCESSORS AND ASSIGNS OF EACH OF THEM (COLLECTIVELY, THE ***"INDEMNIFIED PARTIES"***) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, DAMAGES, LOSSES, LIABILITIES, SUITS AND CAUSES OF ACTION OF EVERY KIND BROUGHT BY ANY PERSON, INCLUDING THE PARTIES HERETO AND THEIR EMPLOYEES, EMPLOYEES' REPRESENTATIVES AND BENEFICIARIES, AND ANY THIRD PARTY OR GOVERNMENTAL AGENCY FOR ECONOMIC LOSSES, DAMAGE TO TANGIBLE OR INTANGIBLE PROPERTY (NOT INCLUDING LOST DATA), OR INJURIES OR DEATH OF PERSONS (COLLECTIVELY "***CLAIMS***"), AND ALL COSTS AND EXPENSES (INCLUDING THE COSTS OF INVESTIGATION AND REASONABLE ATTORNEYS' FEES AND ALL EXPENSES OF LITIGATION AND COURT COSTS), LIABILITIES, AWARDS, AND JUDGMENTS INCURRED BY ANY OF THE INDEMNIFIED PARTIES IN CONNECTION THEREWITH, ARISING, OR ALLEGED TO ARISE OUT OF, THE NEGLIGENT ACTS, ERRORS OR OMISSIONS, VIOLATION OF STATUTE, OR INTENTIONAL MISCONDUCT OF CONTRACTOR, ITS EMPLOYEES, AGENTS, OR SUBCONTRACTORS.

**12.2 NO LIMITATION.** THIS INDEMNIFICATION SHALL NOT BE LIMITED TO DAMAGES, COMPENSATION, OR BENEFITS PAYABLE UNDER INSURANCE POLICIES, WORKERS' COMPENSATION ACTS, DISABILITY BENEFIT ACTS, OR OTHER EMPLOYEES' BENEFIT ACTS. THIS CONTRACTUAL OBLIGATION OF INDEMNIFICATION SHALL SURVIVE SETTLEMENT OF ANY UNDERLYING THIRD-PARTY CLAIM, INCLUDING VOLUNTARY SETTLEMENTS MADE BY ANY OF THE INDEMNIFIED PARTIES WITH SUCH THIRD PARTY.

3

**12.3 Notice and Defense of Claims.** The Indemnified Party shall give Contractor reasonably prompt notice of any such Claim of which it learns. This obligation of indemnification shall survive even if an Indemnified Party does not provide Contractor with reasonably prompt notice of any such Claim of which it learns so long as such failure does not materially prejudice Contractor. It is understood and agreed by Contractor that in the event any of the Indemnified Parties is made a defendant in any suit, action or proceeding for which it is indemnified pursuant to this Agreement, and Contractor fails or refuses to assume the defense thereof, after having been notified by Company or Affiliate to do so, that said Indemnified Party may compromise and settle or defend any such Claim, and Contractor shall be bound and obligated to reimburse said Indemnified Party for the amount expended by Indemnified Party in settling and compromising any such Claim, or for the amount expended by Indemnified Party in paying any judgment rendered therein, together with all reasonable attorneys' fees incurred by Indemnified Party for defense or settlement of such Claim. Any judgment rendered against Indemnified Party or amount expended by Indemnified Party in compromising or settling such Claim shall be conclusive as determining the amount for which Contractor is liable to reimburse Indemnified Party hereunder.

**12.4 Savings**. It is agreed by Contractor and Company with respect to any legal limitations now or hereafter in effect and affecting the validity or enforceability of the indemnification obligations under this Agreement, such legal limitations are made a part of the indemnification obligations and shall operate to amend the indemnification obligations to the minimum extent necessary to bring the provisions into conformity with the requirements of such limitations, and as so modified, the indemnification obligations shall continue in full force and effect.

Doc. 74-1, Pl. Ex. A, §12.

When MGE and USIC negotiated the Agreement, MGE sought language expressly requiring USIC to indemnify (and defend) MGE for claims involving the negligence of MGE and certain MGE-related parties (if the language were enforceable under the law). Specifically, MGE originally proposed language that would have required USIC to protect MGE for "THE ACTS OR INACTIONS, *INCLUDING NEGLIGENCE* . . . OF ANY OF THE INDEMNIFIED PARTIES UNDER THIS AGREEMENT INCIDENTAL TO THE WORK

Case 4:18-cv-00248-FJG   Document 107   Filed 03/20/20   Page 4 of 25

PROVIDE HEREIN." Ex. 3 (Depo. Ex. 3037) at SPIRE000332 (italic emphasis added).[1] Ultimately, the parties agreed to the language memorialized in the Agreement.

MGE first tendered the defense by letter dated May 8, 2013 (Doc. No. 74-3, Pl. Ex. C; Doc. No. 74-5). On May 8, 2013, when Spire (then MGE) began requesting contributions from USIC, it specifically represented that it would "advise USIC of any settlement demands to, or negotiations involving, MGE, relating to the [JJ's Incident] Lawsuits." Doc. No. 55, p. 39.[2] In that same letter, MGE merely requested that USIC "assume the defense of MGE through separate counsel," rather than provide indemnification. Id. Plaintiff, however, argues that in its May 8, 2013 letter, it invoked § 12 of the MPSA, impliedly including indemnification as well as defense. In reply, Defendant notes that the letter contains no mention of the words "reimburse" or "settlement" or "indemnify" (or any of their variants).

USIC accepted MGE's tender of defense under the conditions outlined in the letter dated January 9, 2014. See Doc. No. 83-9 at 2. Specifically:

a. USIC advised MGE that it would be necessary for MGE to produce its invoices from its defense counsel, so that USIC could review them in order

---

[1] Plaintiff argues that the negotiation history is not relevant as it cannot be used to give meaning to the plain language of the final contract. Of course, whether the contract is "plain" or "ambiguous" is a question of law for the Court to determine.

[2] Plaintiff argues in response that this statement was made before USIC rejected MGE's demand for indemnification, which plaintiff therefore argues triggered Section 12.3 of the MPSA, which provides that the Indemnified Party (MGE) may settle the claims against it and the Contractor (USIC) is bound to reimburse the Indemnified Party the amount expended in settlement plus all reasonable attorneys' fees. USIC notes in reply, however, that MGE spent hundreds of thousands of dollars settling claims before USIC had even responded to MGE's original tender of defense, and the request for indemnification did not come until April 2014. Defendant USIC further argues that MGE never gave it advance notice of any settlement negotiations, nor did MGE notify USIC that it considered USIC to have waived its right to participate in the resolution of claims against MGE.

to confirm MGE's defense costs were reasonable and appropriately within the scope of USIC's obligations.

b. USIC indicated that it could accept MGE's tender only with respect to claims in JJ's Litigation cases that triggered USIC's indemnification obligations under the Agreement, *i.e.*, claims that specifically concerned USIC's alleged negligence.

c. USIC also indicated that it could provide certain indemnification, but not for claims that involved MGE's alleged independent negligence or the negligence of third parties, because USIC owed no indemnification for such claims. (This latter category included claims concerning MGE's failure to timely evacuate the area or turn off the gas flow in the area affected by the ruptured gas line.)

In the January 9, 2014 letter, USIC acknowledged that it and MGE had both responded to petitions filed by plaintiffs Simmons, Cramer, Tanner, JJ's, Meek, Plazaview, Mingos, Couture, and Woodward. Doc. No. 83-9 at 1. By letter dated July 24, 2014, USIC offered to defend MGE on the same terms and reservation of rights as outlined in its letter of January 9, 2014. Doc. Nos. 74-4, Pl. Ex. D, #22, and 74-7.

Initially, MGE refused to produce its invoices from its defense counsel. Ex. 14 (Depo. Ex. 3001) at SPIRE003092. USIC then entered into a Common Interest and Confidentiality Agreement ("Confidentiality Agreement") to address MGE's purported concerns about disclosing the invoices from its defense counsel. See Ex. 12 at SPIRE003107; Ex. 15. USIC retained independent indemnification counsel who could review MGE's bills while ensuring that neither USIC's JJ's Litigation counsel nor its in-house counsel would be able to see them. Ex. 13 at SPIRE003127. MGE, however, disputes that the attorneys hired by USIC were truly independent. USIC asserts that even after entering into the Confidentiality Agreement, MGE continued refusing to disclose the requested defense invoices. Ex. 13 at SPIRE003126-28. Then, seven months after USIC reiterated its request, MGE furnished only heavily redacted defense invoices that

redacted information about the work they encompassed. Ex. 16 (Depo. Ex. 3010) at SPIRE003139. Notably, in producing these invoices, MGE did not send the bills to USIC's outside indemnification counsel but, instead, produced them to USIC's in-house counsel. Id.  MGE sought to recover from USIC, among other costs, the cost of expert witnesses whom MGE had retained to testify against USIC.

By letter dated December 22, 2015, USIC rejected MGE's claims for indemnification based on USIC's interpretation of the Agreement (indicating the claims submitted by MGE fell outside the scope of USIC's obligations under the Agreement) and MGE's conduct in settling claims related to the JJ's explosion (specifically, failing to notify USIC before making the settlements, failing to seek or obtain USIC's consent or input before entering into the settlements, and by failing to provide information concerning the defense statements). USIC also reiterated and further explained its opinion that the Agreement does not require full reimbursement of all MGE's defense costs and reserved its rights pending a final resolution of the issues. In response, MGE indicates that per § 12.3 of the MPSA, MGE had no obligation to work with USIC after USIC declined indemnification.

As of the date of this Order, MGE has defended and settled many claims at issue in this litigation, and USIC is unaware of a remaining outstanding claim against MGE or an affiliated entity that the Plaintiffs have not yet settled.   Plaintiffs did not seek USIC's consent or input before making any of these settlements. Spire's corporate representative and General Counsel testified that he was not aware of any instance where MGE notified USIC, or initiated any discussion with USIC, before making any of these settlements. Ex. 1, pp. 64, 78.   MGE, however, indicates that after USIC refused to indemnify it, MGE was no longer under any obligation to share information under Section 12.3 of the MPSA.

7

In the only JJ's-related case that proceeded to trial (J.J.'s Bar & Grill, Inc. v. Time Warner Cable Midwest, LLC, 539 S.W.3d 849 (Mo. Ct. App. 2017), a property-damage case), the jury attributed zero percent fault to USIC.   MGE was not represented at that trial, however, as it had settled the claims against it prior to trial.

The corporate representative (and general counsel) of Spire testified during deposition that Spire (and MGE) had no liability for USIC's marking of the electric lines near the area of Heartland Midwest's excavation. Doc. No. 83-1, pp. 100–101. He also testified that "MGE did not incur expenses or legal fees to defend USIC's conduct." Id., p. 114.   In the JJ's Litigation, Brian Dresel testified under oath as a corporate representative of MGE that "USIC located MGE's facilities properly" and marked them "correctly," that MGE had not determined that USIC bore any blame for the JJ's Incident, and that MGE did not believe that USIC's performance of a "covered task" caused or contributed to the JJ's Incident. Ex. 6 (Excerpts of Deposition of MGE Corporate Representative Brian Dresel), pp. 654-55, 659-60, 801.[3]   In a written mediation statement submitted to the mediator in the JJ's Litigation, MGE asserted that "USIC was not marking the power lines under its agreement with MGE, and, if there was something wrong with those marks, that has nothing to do with the locating USIC did for MGE." Ex. 7 at Spire015950. MGE's expert witness, James Anspach ("Anspach"), opined that "USIC correctly marked the MGE gas line that Heartland hit." Ex. 8, Opinion 7.   However, Anspach also opined that USIC did not adequately fulfill its obligation to correctly mark the number or corridor zone

---

[3] Plaintiff argues this is a false issue that does not establish USIC's right to summary judgment, as Section 12.1 of the Agreement still provides that USIC must indemnify MGE, regardless of MGE's beliefs as to USIC's fault, because each of the underlying lawsuits alleged that USIC was at fault.

8

of the City street light wires (USIC's Ex. 8, Opinion 7) ("because the mark for the electrical lines for the street lights indicated there was one electrical line going to and from the streetlight near the southeast corner of JJ's when, in reality, there were two."). Anspach also testified that, regardless of USIC's actions, Heartland should have continued searching for the gas line before it began its excavation. Ex. 9 (Excerpts of Deposition of James Anspach), pp. 332-346.

Before filing the Petition, MGE repeatedly asserted that it was not merely seeking to recover costs attributable to USIC's negligence or other wrongful conduct. For example, in a letter dated April 8, 2014, MGE's counsel asserted that it was seeking "full indemnity and defense of all claims and lawsuits that have been asserted, or that will in the future be asserted . . . against MGE arising from the [JJ's Event]." Ex. 17 (Depo. Ex. 3002) at Spire003094. Aside from a few initial settlements for negligible amounts about which USIC was not even aware, MGE did not secure releases for USIC. Plaintiffs have not requested, either in their Petition or otherwise in the litigation, indemnification that is limited to the damages attributable to USIC's conduct alone, nor have Plaintiffs offered any evidence related to the amount of such damages.

USIC asserts that one of MGE's employees, Michael Palier, was alleged to be personally liable for damages resulting from the JJ's explosion. For purposes of the current lawsuit, USIC has identified an expert witness who intends to opine that the medical records of Mr. Palier, both before and then immediately after the explosion, demonstrate that he was a functioning alcoholic and suffering from severe withdrawal at the time of the occurrence.

Plaintiffs ultimately filed the Petition against USIC on February 21, 2018, in the Circuit Court of Jackson County, Missouri. Doc. No. 1-1 ("Petition"). Plaintiffs asserted

9

two claims: (1) breach of contract, and (2) declaratory judgment. Both claims sought recovery under § 12.1 of the MPSA, claiming that USIC had not satisfied its obligations to indemnify Spire. USIC removed the Petition to this Court on March 30, 2018. Doc. No. 1. In their Petition, Plaintiffs specifically sought to recover for claims that are not limited to USIC's alleged negligence or other wrongful conduct. Doc. No. 1-1 ¶ 74(b) (seeking a declaration that "USIC's obligations under § 12 of the [Agreement] are not limited, in part or in whole, by allegations or proof of MGE's negligence, or the negligence of any other person or entity."); see also id. ¶ 74(c) (seeking a declaration that "USIC's obligations under § 12 of the MPSA are not limited to USIC's negligent acts, errors or omissions, violation of statute, or intentional misconduct in performance of its obligations to MGE under the MPSA.").

## III.    Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with

10

specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

## IV.    Analysis

A.    USIC's Motion for Summary Judgment (Doc. No. 77)

Defendant USIC moves for summary judgment on the following bases: (1) Missouri's Anti-Indemnity Law invalidates plaintiffs' interpretation of the MPSA to the extent that they would make USIC responsible for MGE/Spire's own negligence, given that the MPSA qualifies as a construction contract under Missouri law, see R.S.Mo. § 434.100; (2) the plain language of the MPSA bars Plaintiffs from recovering because (a) the MPSA only requires USIC to indemnify Spire for claims based on USIC's negligent or wrongful conduct and which arise out of USIC's services for Spire; and (b) Missouri law only requires one party to indemnify another for its own wrongful conduct when the obligation is "expressed in clear and unequivocal terms." Nusbaum v. City of Kansas City, 100 S.W.3d 101, 106 (Mo. 2003); (3) Missouri public policy prevents Plaintiffs from recovering for their own punitive conduct or other misconduct, Alack v. Vic Tanny Int'l of Missouri, Inc., 923 S.W.2d 330, 337 (Mo. 1996); Woods v. QC Fin. Servs., Inc., 280 S.W.3d 90, 99 (Mo. Ct. App. 2008); Pub. Serv. Comm'n of State v. Missouri Gas Energy, 388 S.W.3d 221, 228–32 (Mo. Ct. App. 2012); and (4) Missouri law "will *discharge* the indemnitor" if the indemnitee "materially increases the risk, or prejudices the rights, of the indemnitor." Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co., 714 S.W.2d 597, 603 (Mo. Ct. App. 1986) (emphasis added). For each of these reasons, USIC seeks summary judgment on all claims pled against it.

11

1.    Missouri's Anti-Indemnity Law, R.S. Mo. § 434.100[4]

Defendant argues that Plaintiffs are seeking indemnity for Spire's "own negligence" and "own conduct."   See deposition of plaintiff's corporate representative, Ex. 1 to Defendant's suggestions in support of summary judgment, pp. 59-60.   Defendant indicates R.S.Mo. § 434.100 (the "Anti-Indemnity") law makes the contract between Spire and USIC unenforceable as to any purported agreement to indemnify Spire for Spire's own negligence or wrongdoing.   R.S.Mo. § 434.100 provides:

> 1. Except as provided in subsection 2 of this section, in any contract or agreement for public or private construction work, a party's covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence or wrongdoing is void as against public policy and wholly unenforceable.

---

[4] Plaintiffs assert that the defense of illegality was not sufficiently raised in defendant's affirmative defenses (see Doc. No. 74.2, twelfth affirmative defense, stating: "Plaintiffs' claims are barred, in whole or in part, by the doctrine of illegality and against public policy, including but not limited to Plaintiffs' attempt to seek indemnification for MGE's or other Plaintiffs' conduct that justified punitive damages.").   Plaintiffs argue that USIC did not specifically raise R.S.Mo. § 434.100 until summary judgment briefing, and therefore that statute should not be considered in this case.

In reply, defendant argues that (1) the Eighth Circuit has previously held that a defense based on a state anti-indemnity law is not an affirmative defense that must be pleaded under Rule 8(c), see Masuen v. E.L. Lien & Sons, Inc., 714 F.2d 55, 57 (8th Cir. 1983); (2) the twelfth affirmative defense adequately pleaded illegality, Holway v. Negro Leagues Baseball Museum, 263 F. App'x 538 (8th Cir. 2008) (unpublished) (rejecting argument that defendant needed to cite specific statute in affirmative defense); (3) the Eighth Circuit has consistently held that "'technical failure to comply with Rule 8(c) is not fatal' when the defense 'is raised in the trial court in a manner that does not result in unfair surprise.'" U.S. ex rel. Kraxberger v. Kansas City Power & Light Co., 756 F.3d 1075, 1082 (8th Cir. 2014) (quoting Fin. Timing Publications, Inc. v. Compugraphic Corp., 893 F.2d 936, 944 n.9 (8th Cir. 1990)); and (4) the Eighth Circuit has specifically upheld affirmative defenses raised for the first time in a summary judgment motion, and even when raised only one month before trial. U.S. ex rel. Kraxberger, 756 F.3d at 1082.

For all the reasons stated by Defendant, the Court finds that Defendant did not waive the defense of illegality under the Missouri Anti-Indemnity law. The Court will consider Defendant's argument regarding the Anti-Indemnity statute on the merits.

12

2. The provisions of subsection 1 of this section shall not apply to:

(1) A party's covenant, promise or agreement to indemnify or hold harmless another person from the party's own negligence or wrongdoing or the negligence or wrongdoing of the party's subcontractors and suppliers of any tier;
(2) A party's promise to cause another person or entity to be covered as an insured or additional insured in an insurance contract;
(3) A contract or agreement between state agencies or political subdivisions or between such governmental agencies;
(4) A contract or agreement between a private person and such governmental entities for the use or operation of public property or a public facility;
(5) A contract or agreement with the owner of the public property for the construction, use, maintenance or operation of a private facility when it is located on such public property;
(6) A permit, authorization or contract with such governmental entities for the movement of property on the public highways, roads or streets of this state or any political subdivision;
(7) Construction bonds, or insurance contracts or agreements;
(8) An agreement containing a party's promise to indemnify, defend or hold harmless another person, if the agreement also requires the party to obtain specified limits of insurance to insure the indemnity obligation and the party had the opportunity to recover the cost of the required insurance in its contract price; provided, however, that in such case the party's liability under the indemnity obligation shall be limited to the coverage and limits of the required insurance; or
(9) Railroads regulated by the Federal Railroad Administration.

3. For the purposes of this section, "construction work" shall include, but not be limited to, the construction, alteration, maintenance or repair of any building, structure, highway, bridge, viaduct, or pipeline, or demolition, moving or excavation connected therewith, and shall include the furnishing of surveying, design, engineering, planning or management services, or labor, materials or equipment, in connection with such work.

4. The provisions of this section shall apply only to contracts or agreements entered into after August 28, 1999.

Defendant argues that the MPSA falls into the definition of public or private construction work as R.S.Mo. § 434.100.3 includes, but is not limited to "the construction, alteration, maintenance or repair of any building, structure . . . or pipeline, or demolition, moving *or excavation* connected therewith, and *shall include the furnishing of surveying*,

13

. . . *planning* or management services, *or labor*, materials or equipment, *in connection with such work*." Id. (emphases added). Defendant indicates that the MPSA requires it to perform services in connection with construction and excavation, given that it marks underground facilities "that may be in conflict with digging activity" designated "within a specified excavation area." See USIC's suggestions in support of summary judgment, Ex. 2 p. 18. See also "Contractor's Rate Schedule," recognizing that USIC's services will relate to "long locate construction projects", Doc. No. 55, p. 37. Defendant also notes that, under similar circumstances, a Georgia district court has found that USIC's utility locating work constitutes construction-related work for purposes of Georgia's anti-indemnity statute, Ga. Code Ann. § 13-8-2(b) (West). See N Ill. Gas Co. v. USIC, LLC, Case No. 1:17-CV-05147-CC (N.D. Ga. Mar. 29, 2019) (Ex. 18).[5] Defendant further indicates that construction work also encompasses "alteration, maintenance, or repair" of a "pipeline." R.S. Mo. § 434.100.3, and the MPSA incorporates Missouri's One Call Law which applies to pipelines. Ex. 2, p. 18; R.S.Mo. § 319.015. Defendant also argues that construction work encompasses "surveying," which includes "locating and marking" services under the agreement.

---

[5] In response, plaintiffs note that a final decision has not been entered in N. Ill. Gas Co. v. USIC, LLC because of an intervening decision by the Georgia Supreme Court in Milliken & Co. v. Georgia Power Co., 306 Ga. 6, 829 S.E.2d 111 (2019). In reply, USIC argues that Milliken is irrelevant and plaintiff's arguments are misguided, noting that in Milliken the Georgia Supreme Court upheld the lower court's ruling that the contract at issue was a construction-related contract (the only relevant comparison for this case), and reversed on the issue that the contractual language did not clearly make the indemnitor liable for the indemnitee's sole negligence. 829 S.E.2d at 116. USIC further notes that Georgia's anti-indemnity statute forbids construction-related contracts that purport to indemnify the indemnitee for the indemnitee's own *sole* negligence (*see* Ga. Code Ann. § 13-8-2(b)), whereas Missouri's Anti-Indemnity Law prohibits any agreement covering the indemnitee's sole *or* partial negligence. R.S.Mo. § 434.100.

14

In response, Plaintiffs argue that neither USIC nor MGE were engaged in construction in entering into the MPSA; instead, MGE hired USIC to fulfill MGE's statutory duty under R.S.Mo. § 391.010, the One Call Act (Underground Facility Safety and Damage Prevention Act). Plaintiffs argue that the words "in connection with" located in R.S. Mo. § 434.100.3 have a well-defined meaning in Missouri law, and exclude the tangential relationship of MGE and USIC to third-parties' construction activity (noting that here, MGE was not engaged in construction work, and USIC was merely performing locating services pursuant to its contracts with the various facility owners, including MGE). Plaintiffs note that, in Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 895 (8th Cir. 2014), the Eighth Circuit examined whether the actions of the trustee to a deed of trust, Kozeny, were "in connection with" the sale of a loan by Wells Fargo to the plaintiff, such that Kozeny was a proper party defendant in a Missouri Merchandizing Practice Act claim arising from the loan transaction and subsequent foreclosure. The Eighth Circuit held that Kozeny's trustee services were not something that was sold in the underlying lending transaction, and instead the deed of trust only established a narrow, contingent role for Kozeny if the Wivells defaulted. MGE argues that the relationship of USIC and MGE to the construction project in this case is more attenuated than the relationship between Kozeny and the loan at issue in Wivell, thus arguing that the transaction between MGE and USIC was not "in connection with" the construction involving Heartland Midwest and Time Warner.

In reply, USIC argues that the words "in connection with" appear at only one place in the statute, defining construction work as including "the furnishing of surveying, design, engineering, planning or management services, or labor, materials or equipment, *in connection with* such work." R.S.Mo. § 434.100.3 (emphasis added). USIC notes that

15

the definition of construction work is broader than what Plaintiffs have indicated, however, and Plaintiffs' interpretation does not rebut the argument that USIC's work constitutes "operations, maintenance, or emergency response functions on a pipeline." In addition, USIC notes that the MMPA is not the same type of statute as the Missouri Anti-Indemnity law, and therefore construction of the language "in connection with" under the MMPA should not be extrapolated into this Court's construction in the Anti-Indemnity Statute. There must be a relationship or connection between the sale of merchandise and the alleged unlawful action for liability to attach under the MMPA. Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 414 (Mo. 2014). Unlike the MMPA, USIC states that the Anti-Indemnity Law does not demand a focus on a particular "transaction." Instead, USIC says the focus should be on whether there is a *relational nexus* between the contract containing an indemnity clause (here, the Agreement) and "construction work" as defined under the statute.

Defendant argues that if the MPSA is found to be a construction contract, the indemnity provision fails in its entirety because plaintiffs admit that they cannot extricate or "parse out" damages, fees, and other costs arising from Spire's own conduct. Defendant indicates Plaintiffs should be barred from obtaining any recovery, as the Anti-Indemnity law renders "*wholly unenforceable*" any covered "covenant" or "promise" as against public policy. R.S.Mo. § 434.100. In response Plaintiffs argue that the Anti-Indemnity law only nullifies indemnity for Plaintiff's own negligence – therefore, Plaintiffs argue they may be indemnified for third-parties' negligence, provided the losses arise from, or have been alleged to arise from, some error or omission of USIC. Plaintiffs also argue that USIC ignores the savings clause in Section 12.4 of the MPSA, which provides that to the extent that there are legal limitations to the indemnity, such limitations are

16

made part of the indemnification obligations and operate to amend the indemnification obligations to the minimum extent necessary to bring the agreement in conformity with legal obligations. Therefore, Plaintiffs indicate that if the Court finds the Anti-Indemnity Law to be applicable, the Court should interpret and enforce the agreement within those limitations rather than nullify the agreement.

In reply, USIC notes that it did not ignore the severability clause, instead citing in its suggestions in support of summary judgment two cases for the proposition that a court must strike down an entire indemnification provision when the court cannot simply excise the illegal portions without rewriting the provision to make it legal.   Kempski v. Toll Bros., 582 F. Supp. 2d 636, 643–44 (D. Del. 2008); Barton Malow Co. v. Grunau Co., 835 So. 2d 1164, 1166–67 (Fla. Dist. Ct. App. 2002).   Those same arguments apply to the indemnity provision in the MPSA – there is no clause in § 12.1 of the Agreement that separately addresses indemnification for MGE's own negligence, so the Court will not be able to sever illegal portions of the Agreement without rewriting the provision.   See, e.g., ReBath, LLC v. All-Brite Sols., LLC, No. 2:13-CV-02500-JWS, 2014 WL 12567177, at *4 (D. Ariz. Feb. 19, 2014) ("[A] court cannot go further than severing grammatically severable provisions; it cannot rewrite the agreement in an attempt to make it enforceable."); Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 655 S.E.2d 362, 373 (2008) ("Severing the unenforceable provisions of the arbitration clause at issue . . . would require the Court to rewrite the entire clause, and we decline to do so."); Totten v. Emp. Benefits Mgmt., Inc., 60 Va. Cir. 342, at *2 (Va. Cir. Ct. 2002) (refusing to enforce severability clause that "asks the Court to rewrite legally offensive portions of the contract").

17

The Court concludes that Section 12.1 of the MPSA violates Missouri's Anti-Indemnity Law, R.S.Mo. § 434.100. The work contemplated by the parties in the MPSA qualifies as construction work under R.S.Mo. § 434.100.3, in that it includes (1) the maintenance or repair or pipelines; (2) the excavation connected with pipelines; and (3) the furnishing of planning, design, or surveying services in connection with such work. Moreover, the Court agrees with Defendant that indemnity provision in § 12.1 fails in its entirety because plaintiffs are unable to extricate or "parse out" damages, fees, and other costs arising from Spire's own conduct.   Furthermore, despite the severability clause in the MPSA, the Court declines to rewrite the indemnification provisions such that § 12.1 would be enforceable.   For these reasons, Defendant's motion for summary judgment must be **GRANTED**.

2.      Language used in the MPSA

In the alternative, if the Missouri Anti-Indemnity law was found not to apply, Defendant argues that the language in § 12.1 of the MPSA does not set forth in clear and unequivocal terms that USIC was accepting responsibility for Plaintiffs' own negligence. USIC indicates that the undisputed evidence shows that plaintiffs seek recovery for other parties' conduct rather than USIC's negligence, noting: (1) Spire's corporate representative and General Counsel specifically admitted that Spire had no liability for USIC's conduct; (2) Spire unilaterally paid approximately thirty times what USIC did to settle the JJ's cases, and in the only case to go to trial a jury found that USIC had zero fault; (3) Spire officials (including another corporate representative and an expert witness) repeatedly admitted that USIC acted correctly during the events at issue in the JJ's Incident, and that the underlying costs had not arisen from USIC's performance under the MPSA; and (4) Plaintiffs have stated they are not simply seeking to recover for USIC's

18

conduct. Doc. 1-1 ¶ 74(b) (seeking a declaration that "USIC's obligations under § 12 of the [Agreement] are not limited, in part or in whole, by allegations or proof of MGE's negligence, or the negligence of any other person or entity.").

In addition, Plaintiffs have declined to pursue any relief under any "limited indemnification" theory and have failed to offer any evidence on which to calculate the damages on such a theory. Missouri law will not require one party to indemnify another party for the latter's wrongful conduct unless that obligation is "expressed in clear and unequivocal terms." Nusbaum, 100 S.W.3d at 106. "[W]here *any doubt* exists as to the intension of the parties, courts in Missouri will not construe a contract of indemnity to indemnify against the indemnitee's own negligence." Id.

USIC argues that the MPSA lacks clear language imposing responsibility on USIC for Spire's conduct, limiting its indemnification provision to claims "arising, or alleged to arise out of, the negligent acts, errors or omissions, violation of statute, or intentional misconduct" of USIC. MPSA § 12.1. The MPSA does not specify indemnification for Spire for its own negligence or for USIC's negligence that is unrelated to USIC's work for Spire. Additionally, to the extent the Court finds the Agreement ambiguous and considers extrinsic evidence, USIC notes that Spire sought language protecting itself from its own negligence, and USIC specifically rejected such language prior to entering the MPSA.

In response, MGE notes that recent Missouri cases find that an agreement between sophisticated entities (like MGE and USIC) to indemnify against "any and all" claims is "clear and unequivocal," as such a statement means what it says and includes claims based, in whole or in part, on the indemnitee's negligence. Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc., 163 S.W.3d 910, 914 (Mo. 2005) (distinguishing Alack as being between one sophisticated and one non-sophisticated consumer, as opposed to a

19

contract between equals). See also Heubel Materials Handling Co. v. Universal Underwriters Ins. Co., 704 F.3d 558, 567–68 (8th Cir. 2013); Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc., 59 S.W.3d 505 (Mo. 2001). In addition, Plaintiff argues that the only limitation on "any and all" claims is that such claims are "arising or alleged to arise out of, the negligent acts, errors or omissions, violations of statute or the intentional misconduct of [USIC] . . . ." MPSA, § 12.1. Here, Plaintiffs argue that in each of the underlying lawsuits, the claims were alleged to arise from USIC's negligent acts, errors or omissions. Finally, Plaintiffs argue that negotiation history should not be considered because the contract is unambiguous.

In reply, USIC suggests that Plaintiffs have focused all their attention on the phrase "any and all," without focusing any attention on the limiting language in the Agreement, which provides that the indemnification needs to be based on the indemnitor's conduct. Defendant indicates the cases on which Plaintiffs rely (Utility Service and Maintenance, Inc., 163 S.W.3d 910; Purcell Tire & Rubber Co., 59 S.W.3d 505; Heubel Materials Handling Co., 704 F.3d 558; and Praetorian Ins. Co. v. Site Inspection, LLC, 604 F.3d 509 (8th Cir. 2010)) allowed indemnification for the indemnitee's own negligence only because there was no limiting language similar to what is present in the MPSA. Instead, USIC argues that courts consistently hold that when an indemnification provision refers to the *indemnitor's* conduct alone and does not explicitly refer to the indemnitee's conduct, it should be interpreted to allow indemnification and defense *only* for the indemnitor's conduct. See e.g., XTRA Lease LLC v. Pacer Int'l, Inc., No. 4:10CV162 TIA, 2012 WL 10491 (E.D. Mo. Jan. 3, 2012), at *2 and *4 (E.D. Mo. Jan. 3, 2012) (applying Missouri law and distinguishing Noranda); Econ. Forms Corp. v. J.S. Alberici Const. Co., 53

S.W.3d 552, 554–55 (Mo. Ct. App. 2000), <u>opinion adopted and reinstated after retransfer</u> (Oct. 5, 2001).

The Court finds that Section 12.1 of the MPSA does not clearly and unambiguously indicate that USIC intended to indemnify MGE for its own negligence; instead, it appears from the plain language of the MPSA that the parties intended for USIC to indemnify MGE only for USIC's own negligence or alleged negligence. Just because the underlying lawsuits unsurprisingly alleged that USIC was negligent does not mean that USIC should therefore be on the hook for millions and millions of dollars in settlements entered into by MGE. The Court does not believe that the parties intended for USIC to become Plaintiffs' insurer. Moreover, in the alternative, if the MPSA's language is ambiguous, the negotiation history provides strong support for the argument that USIC did not intend to be Plaintiffs' insurer, given that it explicitly rejected such language in the parties' negotiations.

Accordingly, for this additional reason, the Court finds that USIC's motion for summary judgment must be granted.

3. Indemnitee's duty toward the indemnitor

Finally, and in the alternative, the Court considers whether Spire breached its obligations toward USIC in settling claims (a) without providing enough notice to USIC and/or (b) by materially increasing the risk or prejudicing the rights of USIC. See <u>Holiday Inns, Inc. v. Thirteen-Fifty Inv. Co.</u>, 714 S.W.2d 597, 603 (Mo. Ct. App. 1986). Under Missouri law, the "indemnitee" (Plaintiffs, in this instance) must satisfy several duties toward the "indemnitor" (USIC). Missouri courts "will *discharge* the indemnitor" if the indemnitee "materially increases the risk, or prejudices the rights, of the indemnitor." <u>Holiday Inns, Inc.</u>, 714 S.W.2d at 603 (emphasis added). Courts have found breach of

21

the duty towards the indemnitor in the following actions: (1) if the indemnitee withholds material information, such as the fact that it is negotiating or contemplating settlements, or information the indemnitor requires in order to assess the costs that the indemnitee seeks to recover (In re Duncan, 987 F.2d 490, 492 (8th Cir. 1993); Inman v. St. Paul Fire & Marine Ins. Co., 347 S.W.3d 569, 580 (Mo. Ct. App. 2011), City of Grandview, Missouri v. Energy, No. 11-00822-CV-W-BP, 2012 WL 12897987 (W.D. Mo. July 26, 2012)); and (2) if the indemnitee settles for an unreasonable sum or enters into a settlement without first tendering the claim to the indemnitor. (Burns & McDonnell Eng'g Co. v. Torson Const. Co., 834 S.W.2d 755, 759 (Mo. Ct. App. 1992); Holiday Inns, Inc., 714 S.W.2d at 603).

USIC says Spire breached these obligations by: (1) spending several million dollars settling claims without notifying USIC or giving USIC an opportunity to assess or contest the settlements, and without securing releases for USIC in the process of settling these claims for which it now seeks reimbursement, Holiday Inns, Inc., 714 S.W.2d at 603; (2) refusing to provide USIC with information to allow USIC to assess the amounts of legal fees and whether those fees were reasonable, Burns & McDonnell Engineering Co., 834 S.W.2d at 759; and (3) incurring costs in such a way that it prevented USIC from being able to separate MGE's costs from those that purportedly arose from other parties' conduct.

In response, MGE indicates that it had no duty to cooperate after USIC declined coverage. Section 12.3 of the Agreement provides:

> It is understood and agreed by Contractor that in the event any of the Indemnified Parties is made a defendant in any suit, action or proceeding for which it is indemnified pursuant to this Agreement, and Contractor fails or refuses to assume the defense thereof, after having been notified by Company or Affiliate to do so, that said Indemnified Party may compromise and settle or defend any such Claim, and Contractor shall be

22

> bound and obligated to reimburse said Indemnified Party for
> the amount expended by Indemnified Party in settling and
> compromising any such Claim, or for the amount expended
> by Indemnified Party in paying any judgment rendered
> therein, together with all reasonable attorneys' fees incurred
> by Indemnified Party for defense or settlement of such Claim.
> Any judgment rendered against Indemnified Party or amount
> expended by Indemnified Party in compromising or settling
> such Claim shall be conclusive as determining the amount for
> which Contractor is liable to reimburse Indemnified Party
> hereunder.

(Doc. 74.1).   MGE indicates that when USIC responded via letter that the contractual

language "any and all claims . . . arising out of . . . USIC's negligence, errors or omissions"

really only meant that portion of any claim in which MGE was required to defend USIC's

conduct and which had no relation to MGE's conduct (see USIC letter dated July 24,

2014), such response met the requirements of Section 12.3 of the Agreement and

therefore MGE no longer had the duty to cooperate with Spire.   Moreover, "[w]here a

demand is made upon the indemnor [sic] who has actual knowledge of the underlying

dispute, a good faith settlement is binding on the indemnor. For the settlement to be

binding upon [indemnitor] the settlement must be made in good faith and the claim must

have some foundation. The claim must have a 'tenable ground' or must be based on a

'colorable right' and cannot be 'utterly baseless.'" Stephenson v. First Missouri Corp., 861

S.W.2d 651, 657 (Mo. Ct. App. 1993) (internal citations omitted).     In     reply,     USIC

indicates that MGE does not dispute that its actions prejudiced USIC and raised USIC's

risk exposure.   Instead, MGE's response is that USIC waived its right to participate in

negotiations because it did not offer unlimited indemnification of MGE.   The cases cited

by Plaintiffs are only those in which the indemnitor completely refused to provide any

defense or indemnification, unlike the situation here.   USIC further argues that whether

it "failed or refused" to accept MGE's tender is bound with its previous arguments

regarding interpretation of the scope of the indemnity agreement, and as seen above, this Court agrees with USIC's reasoning about the scope of the indemnity agreement. In the insurance law context, only an unjustified refusal to defend by an insurer allows an insured to settle a claim on its own.   See e.g., Allen v. Bryers, 512 S.W.3d 17, 32 (Mo. 2016), as modified (Apr. 4, 2017); U-Haul Co. of Missouri v. Carter, 567 S.W.3d 680, 685–86 (Mo. Ct. App. 2019). Furthermore, "Missouri law requires an indemnitee to protect the indemnitor against liability by acting reasonably *under all circumstances*." City of Grandview, Missouri v. Energy, No. 11-00822-CV-W-BP, 2013 WL 12147738, at *5 (W.D. Mo. Jan. 10, 2013) (emphasis added).   The indemnitee must refrain from compromising the indemnitor's rights, especially in settlement negotiations.   Holiday Inns, Inc., 714 S.W.2d at 602.

The Court finds that Plaintiffs violated their duties toward USIC.   Plaintiffs spent hundreds of thousands of dollars settling cases before USIC had responded to MGE's original tender of defense, despite MGE's representation that it would "advise USIC of any settlement demands to, or negotiations involving, MGE, relating to the [JJ's Incident] Lawsuits." Doc. 74-5, p. 2. For the most part, Plaintiffs settled these claims without securing releases for USIC.   Plaintiffs also refused to provide USIC with information during the settlement process, despite USIC hiring separate counsel to review MGE's legal fees and other information. Plaintiffs' settlement practices have also left USIC and the Court without a means of determining what portion (if any) of the settlements paid in the underlying cases could be attributed to USIC's actions (or inactions).   Given these

failures by Plaintiffs, the Court concludes that Defendant USIC's motion for summary judgment must be granted on this alternative basis, as well.[6]

## IV.     Conclusion

For the foregoing reasons, (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 73) is **DENIED**; (2) USIC Locating Services, LLC's Motion for Summary Judgment (Doc. No. 77) is **GRANTED**; and (3) all remaining pending motions (Doc. Nos. 59, 61, 63, 65, 67, and 69) are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Date: March 20, 2020                                      **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                                    Fernando J. Gaitan, Jr.
                                                                   United States District Judge

---

[6] The Court does not find it necessary to reach USIC's arguments regarding the unavailability of indemnity for punitive damages or other misconduct.